UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| DIANE LYNN GIBBS, | ) | No. ED CV 12-588-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 26, 2012, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on May 7, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 17, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on December 19, 1960. [Administrative Record ("AR") at 58.] She has a high school education [AR at 146] and no past relevant work experience.[1] [AR at 45-46.]

Plaintiff protectively filed an application for Supplemental Security Income payments on September 21, 2010, and filed an application for Disability Insurance Benefits on November 4, 2010, alleging that she has been unable to work since December 31, 1986, due to bipolar disorder, depression, anxiety, suicidal ideations, insomnia, anger problems, an inability to concentrate, violent outbursts, heart disease, and an abnormal mass on her breast. [AR at 58-59, 63-64, 131-38, 144-54, 192-99.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 66-86.] A hearing was held on December 20, 2011, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 27-48.] On December 29, 2011, the ALJ determined that plaintiff was not disabled. [AR at 9-22.] On February 22, 2012, the Appeals Council denied plaintiff's request for review. [AR at 1-3, 5.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Plaintiff testified at her hearing before the Administrative Law Judge that the last time she worked was 15 or more years before the date of the hearing. [AR at 32.] Based on that testimony, a vocational expert testified that plaintiff does not have any past relevant work. [AR at 45-46.]

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since December 31, 1986, her alleged disability onset date. [AR at 11.][2] At step two, the ALJ concluded that plaintiff has the severe impairments of: a history of asthma, controlled; a history of supraventricular tachycardia, status post ablation in 1996, controlled; obesity; and bipolar I disorder, not otherwise specified. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 12.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform "medium work" as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c),[4] except that she: "is limited to

---

[2]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 1991. [AR at 11.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   20 C.F.R. §§ 404.1567(c), 416.967(c) define "medium work" as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

occasional overhead reaching with the non-dominant left arm"; should "avoid concentrated exposure to fumes, odors, gases, or poorly ventilated areas and chemicals"; and "is limited to simple routine, repetitive tasks that require only occasional contact with the public or other co-workers." [AR at 13.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 20.] At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 21.] Accordingly, the ALJ determined that plaintiff has not been disabled at any time from December 31, 1986, through December 29, 2011, the date of the decision. [AR at 22.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly: (1) concluded that plaintiff can perform other work in the national economy; (2) evaluated the opinions of plaintiff's treating and examining psychiatrists; and (3) discounted plaintiff's credibility. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN AND EXAMINING PHYSICIAN OPINIONS**

Plaintiff contends that the ALJ improperly rejected the opinions of her treating psychiatrist and an examining psychiatrist. [JS at 5-21.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

Where a treating physician's opinion does not contradict other medical evidence, the ALJ must provide clear and convincing reasons to discount it. Lester, 81 F.3d at 830; see also Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Where a treating physician's opinion conflicts with other medical evidence, the ALJ must set forth specific and legitimate reasons supported by substantial evidence in the record to reject it. Lester, 81 F.3d at 830; see also McAllister v. Sullivan, 888 F.2d 599, 602-03 (9th Cir. 1989). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. See id. at 830-31. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct." Id.

Psychiatrist Dennis Payne performed a mental status examination of plaintiff on June 8, 2010, noting that her mood and/or affect was depressed, and diagnosing her with bipolar disorder. [AR at 468-69.] Thereafter, Dr. Payne saw plaintiff between once and several times a month from June 2010 to December 2010, and from April 2011 to November 2011. [AR at 460-67, 527-31, 564-75.] During each visit, Dr. Payne noted plaintiff's subjective complaints, diagnosed her with bipolar disorder, and prescribed her with various medications. [See id.] In particular, Dr. Payne increased and decreased the dosages of plaintiff's medications, discontinued ineffective medications, and prescribed new medications in an attempt to increase the efficacy of her treatment. [See AR at 460, 464-69, 475, 527.] On October 27, 2011, Dr. Payne completed a Medical Opinion Re: Mental Ability to Do Work-Related Activities form concerning plaintiff. [AR at 542-43.] In the Medical Opinion form, Dr. Payne opined that with regard to unskilled work, plaintiff "cannot satisfactorily perform [the following activities] independently, appropriately, effectively and on a sustained basis in a regular work setting": remember work-like procedures;

understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Payne also indicated that plaintiff has a substantial loss of ability to: sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms. [AR at 542.]

On March 21, 2011, psychiatrist Ernest A. Bagner III, performed a Complete Psychiatric Evaluation of plaintiff. [AR at 502-05.] Based on his examination, Dr. Bagner found that plaintiff's "affect [was] mood congruent" to her report that she felt "depressed." [AR at 503.] He also found that her speech was "moderately decreased in rate, rhythm and volume." [AR at 504.] Dr. Bagner diagnosed plaintiff with mood disorder, not otherwise specified, and opined that plaintiff would have: zero to mild limitations completing simple tasks; mild limitations maintaining concentration and attention; mild limitations interacting with supervisors, peers, and the public; and moderate limitations completing a normal workweek without interruption. [AR at 505.]

On April 12, 2011, nonexamining psychiatrist Dan Funkenstein reviewed some of plaintiff's records and opined that plaintiff is not significantly limited in: remembering locations and work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and interacting with supervisors, peers, and the public. [AR at 506-07, 520-22.] Dr. Funkenstein summarized his opinion of plaintiff's mental RFC by stating, "[it] appears [plaintiff] can perform at least [simple repetitive tasks]." [AR at 508, 521.] On August 1, 2011, another nonexamining psychiatrist -- Dr. H. Amado -- affirmed Dr. Funkenstein's opinion. [See AR 535-37.]

In his decision, the ALJ assigned "less weight" to Dr. Payne's opinion and "significant but not full weight" to Dr. Bagner's opinion, but gave the "greatest weight" to Dr. Funkenstein's and Dr. Amado's opinions. [See AR at 19.] Thus, the ALJ did not incorporate into his determination of plaintiff's RFC most of the limitations found by Dr. Payne and some of the limitations found by Dr. Bagner. [Compare AR at 13 with AR at 505, 542.] Since Dr. Funkenstein's and Dr. Amado's opinions regarding plaintiff's work restrictions conflicted with those of Dr. Payne and Dr. Bagner, the ALJ was required to give specific and legitimate reasons for assigning less weight to Dr. Payne's and Dr. Bagner's opinions. See Lester, 81 F.3d at 830. He failed to do so.

In rejecting Dr. Payne's opinion, the ALJ first stated that Dr. Payne "relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff], and seemed to accept as true most, if not all, of what [plaintiff] reported" [AR at 19] -- which the ALJ found "less than fully credible." [AR at 14.] However, Dr. Payne's opinion was based not only on plaintiff's subjective complaints, but also on his June 8, 2010, mental status examination of plaintiff, his personal observations of plaintiff on a more-than-monthly basis over a period of 14 months, and his regular monitoring of plaintiff's medication regimen. The opinions of treating physicians are generally given more weight than the opinions of other physicians because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see id. at §§ 404.1527(c)(2)(i), (ii), 416.927(c)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received). Based on the length of the treatment relationship and Dr. Payne's experience with plaintiff, Dr. Payne had the broadest range of knowledge regarding plaintiff's mental condition, which is supported by the treatment records. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an

overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."). The ALJ failed to consider the unique nature of Dr. Payne's treatment relationship with plaintiff. Moreover, an ALJ does not provide a legitimate reason to reject the opinion of a treating physician "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." See Ryan v. Comm'r of Social Sec. Admin., 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (citing Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001)). As in Ryan, "[t]here is nothing in the record [here] to suggest that [Dr. Payne] disbelieved [plaintiff's] description of her symptoms, or that [Dr. Payne] relied on those descriptions more heavily than his own clinical observations in reaching the conclusion that [plaintiff is] incapable of maintaining a regular work schedule." See Ryan, 528 F.3d at 1200.

Next, the ALJ stated that "[t]he course of treatment pursued by [Dr. Payne] has not been consistent with what one would expect if [plaintiff] were truly disabled, as the doctor has reported." [AR at 19.] However, as discussed supra, Dr. Payne saw plaintiff between once a month and several times a month from June 2010 to December 2010, and from April 2011 to November 2011. [See AR at 460-69, 527-31, 564-75.] He also prescribed psychotropic medications to her, and made changes to her medication regimen on numerous occasions in an effort to increase the efficacy of the treatment. [See AR at 460, 464-69, 475, 527.] The ALJ failed to state *specifically* how the care plaintiff received from Dr. Payne was conservative, and he pointed to nothing in the record to show that any specific treatment *in addition to* the treatment plaintiff was receiving is a standard method of treating her bipolar disorder. [See AR at 13-20.] As such, the ALJ's second reason for rejecting Dr. Payne's opinion concerning plaintiff's limitations does not reach the level of specificity required to reject the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions.") (footnote omitted).

Third, the ALJ stated that "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another," and stated that this is "more likely in situations where the opinion in question departs substantially from the evidence of record, as in the current case." [AR at 19.] This reason to reject Dr. Payne's opinion also lacks support. As discussed supra, the record here contains at least some objective observations and testing to support Dr. Payne's opinions. Furthermore, the ALJ conceded that "it is difficult to confirm the presence of such motives" [id.], and he pointed to no evidence of any actual impropriety on the part of Dr. Payne. See Lester, 81 F.3d at 832 (quoting Ratto v. Sec'y, Dept. of Health and Human Servs., 839 F. Supp. 1415, 1426 (D. Or. 1993)) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), cert. denied, 519 U.S. 1113 (1997)) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion). Indeed, the record contains no evidence that Dr. Payne embellished his assessment of plaintiff's limitations in order to assist her with her benefits claim. See Reddick, 157 F.3d at 725-26 (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient). The ALJ failed to give any specific and legitimate reason to reject Dr. Payne's opinion.

As for Dr. Bagner, the ALJ assigned less weight to his opinion for the sole reason that "Dr. Bagner did not have the benefit of reviewing all the medical evidence." [AR at 19.] However, the ALJ did not state what portions of Dr. Bagner's opinion he considered "consistent with [the doctor's] objective findings" and what portions he was rejecting. [See id.] Nor did he specifically identify what medical evidence not reviewed by Dr. Bagner conflicts with or undermines those portions of the doctor's opinion the ALJ was rejecting. As such, this reason is not sufficiently specific to implicitly reject the opinion of an examining physician. See Embrey, 849 F.2d at 421-23; Lester, 81 F.3d at 830-31 (ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician).

1  Finally, the Court notes that the ALJ gave "the greatest weight" to the opinions of Dr.
2 Funkenstein and Dr. Amado because he found that they "had the benefit of reviewing the majority
3 of Dr. Payne's records as well as ... considering the opinion of Dr. Bagner." [AR at 19.] However,
4 the ALJ failed to explain how these psychiatrists' review of Dr. Payne's records and Dr. Bagner's
5 opinions, without *themselves* conducting any examination of plaintiff, warrants the assignment of
6 significantly greater weight to their opinions than to the opinions of Dr. Payne and Dr. Bagner, or
7 why their review of opinions that the ALJ *rejected* could lead to more accurate conclusions.

8  The ALJ failed to provide any specific and legitimate reasons to reject Dr. Payne's and Dr.
9 Bagner's opinions. Remand is warranted on this issue.[5]

10 /
11 /
12 /
13 /
14 /
15 /
16 /
17 /
18 /
19 /
20 /
21 /
22 /
23 /
24 /
25 /

---

[5] As the ALJ's proper consideration of Dr. Payne's and Dr. Bagner's opinions may impact on his evaluation of plaintiff's credibility and his step five determination, the Court exercises its discretion not to address herein plaintiff's first and third contentions of error.

11

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider the opinions of Dr. Payne and Dr. Bagner. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 9, 2013

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE